UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| JENDRI MALDONADO-ZAPON, | ) |
| Plaintiff, | ) Case No. 1:05-cv-412 |
| v. | ) Honorable Gordon J. Quist |
| UNKNOWN CROMPTON et al., | ) |
| Defendants. | ) |

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.        Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections in Oaks Correctional Facility. In his *pro se* complaint, Plaintiff sues physician (unknown) Crompton and nurses (unknown) Briske and Vicki Jensen. Plaintiff's complaint concerns his inability to see a physician over approximately two and one-half months because of a scheduling backlog for patients with more serious medical needs.

Plaintiff submitted a health care request on November 8, 2004, to see a doctor for back pain. On November 11, 2004, a nurse examined Plaintiff and prescribed aspirin for Plaintiff. On November 29, 2004, December 3, 2004 and December 8, 2004, Plaintiff submitted additional health care requests for a doctor's appointment because the aspirin had not alleviated his back pain. In response to the health care requests, the facility scheduled a doctor's appointment for Plaintiff on December 13, 2004.

On December 15, 2004, Plaintiff filed a Step I grievance (ECF 04-12-21919-D1) concerning his back pain. In his grievance, Plaintiff alleged that he sent three health requests to see a physician regarding his back pain. He also states that he was seen by a (unknown) nurse who provided aspirin to Plaintiff. However, the aspirin did not alleviate the back pain. While the facility scheduled an appointment on December 13, 2004, Plaintiff was unable to see a doctor at that time due to the patient backlog. The Step I grievance response states that a (unknown) nurse examined Plaintiff on November 10, 2004, and November 12, 2004. The response also provides that Plaintiff was referred to a physician in November for a non-urgent complaint but he has been rescheduled several times. The facility rescheduled Plaintiff's doctor's appointment for January 10, 2005.

Plaintiff filed a Step II grievance on January 11, 2005 (ECF-04-12-21912-D1) when he was not seen by a physician on January 10, 2005. Plaintiff alleges in his Step II grievance that he saw a (unknown) nurse on November 10 and 11, 2004, who prescribed aspirin to Plaintiff. However, Plaintiff alleges that his appointment on November 12, 2004, was for an annual health care screen rather than for his back pain. The response to the Step II grievance states that Plaintiff's doctor's appointments were rescheduled because of the backlog of patients who needed more urgent care. An unknown medical service provider evaluated Plaintiff on January 19, 2005, and prescribed Motrin for his lower back pain.

Plaintiff filed a Step III grievance on February 8, 2005. After receiving the facilities' response to the Step II grievance on February 14, 2005, Plaintiff filed another Step III grievance on February 21, 2005. Plaintiff noted in both Step III grievances that he had seen a (unknown) doctor on January 19, 2005, who stated that he would examine Plaintiff again in two weeks. On February 14, 2005, Defendant Crompton examined Plaintiff and prescribed Motrin for Plaintiff's back pain. Plaintiff received x-rays on February 18, 2005, but he was still waiting for the results at the time of his February 21, 2005 Step III grievance. Plaintiff also alleges that his health care requests have not been addressed in accordance with MICH. DEP'T OF CORR., Policy Directive 03.04.100. The response to both of the Step III grievances states that Plaintiff's doctor's appointments were postponed twice due to other patient's more urgent medical needs.

Plaintiff requests compensatory and punitive damages and appointment of counsel.

II.     Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with

respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El,* 215 F.3d at 642. A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has been done in an attempt to exhaust the claims. *Id.*[1] In addition, a prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *accord Harbin-Bey v. Rutter*, No. 04-1458, 2005 WL 1981877, at *8 (6th Cir. Aug. 18, 2005); *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir.

---

[1] To assist prisoners in meeting this requirement, this court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. L.R. 25(a). Plaintiff's complaint was filed on the form, and he has admitted that he did not grieve his claims.

Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

Plaintiff's claim regarding the rescheduling of his doctor's appointments for his back pain is the type of claim that may be grieved through the three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement which directly affect the grievant") (effective 4/28/03). Plaintiff filed three grievances related to the rescheduling of his doctor's appointments for his back pain. Plaintiff, however, never mentioned any of the named Defendants in his Step I grievance or Step II grievance, as required by *Curry*, 249 F.3d at 505, and *Thomas*, 337 F.3d at 735. The Step III grievance mentions an examination by Defendant Crompton, who prescribed Motrin for Plaintiff's back pain, but does not provide that Defendant Crompton caused the scheduling delay in Plaintiff's medical treatment. No other Defendants were named in the Step III grievance. In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton*, 321 F.3d at 574. However, where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal. *Id.* Raising allegations against a particular defendant for the first time at Step II or III, however, is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. Accordingly, the Court finds that Plaintiff has failed to demonstrate exhaustion of available administrative remedies against Defendants Crompton, Briske and Jensen.

Ordinarily, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at

645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). The Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown*, 139 F.3d at 1103. Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

        III.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff makes only one claim in his complaint - that Defendants were deliberately indifferent to his need for medical treatment because he had to reschedule several doctor's appointments for his back pain. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to

provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the instant case, Plaintiff's grievances and complaint completely fail to allege conduct that would meet either prong of the deliberate indifference standard. First, Plaintiff does not allege that Defendants Crompton, Briske and Jensen ignored a substantial risk of serious harm to Plaintiff to satisfy the objective component of the test. Plaintiff suffered only from back pain. Plaintiff's grievances and complaint acknowledge that he was seen by medical staff and provided pain medication for his back pain. He also received x-rays on February 18, 2005. Further, Plaintiff does not allege in his grievances or complaint that the delay in scheduling Plaintiff for a doctor's appointment caused any detrimental effect to Plaintiff's condition. While Plaintiff states in his complaint that the "denial of necessary medical attention could potentially result in a disability," this allegation is wholly conclusory and unsupported. Plaintiff has alleged no facts to support his conclusion that his denial of medical attention may result in a disability. Second, Plaintiff fails to allege that Defendants Crompton, Briske and Jensen acted with the requisite culpable state of mind to demonstrate the subjective component of the test. The claim that Defendants were deliberately indifferent to Plaintiff's need for medical access because Plaintiff was rescheduled several times for doctor's appointments alleges nothing more than simple negligence. Therefore, Plaintiff fails to state a claim against Defendants Crompton, Briske and Jensen.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated:  September 23, 2005                   s/Gordon J. Quist
                                                             Gordon J. Quist
                                                             United States District Judge